UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| STEPHANIE PRITCHARD | CIVIL ACTION NO. 5:18-CV-1403 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| MERAKEY PENNSYLVANIA | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiff Stephanie Pritchard ("Pritchard") brings this action against her former employer, Defendant Merakey Pennsylvania[1] ("Merakey"). Pritchard alleges that Merakey violated Title VII of the Civil Rights Act by engaging in gender discrimination, retaliation, and disability discrimination. [Record Documenti 11 at 1]. Merakey has now filed a motion for summary judgment. [Record Document 30]. Pritchard opposed the motion and objected to two exhibits submitted in support of Merakey's motion. [Record Document 32 at 1-2]. For the reasons stated below, Merakey's motion [Record Document 30] is **GRANTED**.

## BACKGROUND

Merakey is a non-profit company providing "behavioral health services" through teams of specialists collaborating to "provide complete mental health and other supportive services" to individuals struggling with "severe and pervasive mental illness." [Record Document 30-2 at 1]. Pritchard began working for Merakey in January 2011 as an administrative assistant with job duties including updating and maintaining records of each staff members' contacts with

[1] The Defendant was formerly known as "NHS Pennsylvania." [Record Documents 11 at 1 and 12 at 3].

the clients, taking notes at morning staff meetings, conducting surveys with clients regarding their satisfaction with the services received, and "maintain[ing] consumer, employee and departmental confidentiality and confidential information as per [Merakey] policies and procedures." [Record Documents 30-3 at 1-2 and 30-13 at 2-5].

Pritchard's employment seemingly continued without incident until May 2017. At this time, Pritchard received a "Supervision Record" for failing to properly pass along two phone messages to team leaders. [Record Document 30-7]. In July 2017, she received "1st level counseling" for sending unprofessional emails. [Record Document 30-8 at 1]. In August 2017, Pritchard received "final counseling" in response to several other incidents, including failing to properly submit employee's time reports, failing to properly maintain a personnel file, and disclosing private information about a program director. [Record Document 30-9].

According to Merakey, on November 9, 2017, Merakey Assistant State Director Louisiana Adult Services, Jessica McNabb ("McNabb"), received reports that a client, AB,[2] indicated to two Merakey employees that Pritchard told him confidential information about internal staffing decisions. [Record Document 30-15 at 1]. On the morning of November 15, 2017, McNabb received another report that AB told a staff member that he was unhappy about the staffing decision and that Pritchard was the source of his information. [Record Document 30-15 at 2]. This is when McNabb says she asked the program director, Lindsey Walker ("Walker"), to gather written statements from the three individuals AB spoke to about this so she could terminate Pritchard. [Record Document 30-15 at 2]. That afternoon,

[2] To protect the client's confidentiality, the Court will only identify him by his initials. [Record Document 8].

Pritchard reported that AB had touched her breast in the parking lot. [Record Document 30-15 at 2]

According to Pritchard, AB began sexually harassing her in May 2017. [Record Document 32-2 at 83]. During a series of encounters, he engaged in behaviors such as massaging her shoulders, placing his chin on top of her head, and one time rubbing his face against hers. [Record Document 32-2 at 83-90]. The worst incident occurred on November 15, 2017 in the Merakey parking lot when AB approached Pritchard and put his arms around her, cupping her left breast in his right hand. [Record Document 32-2 at 92, 102]. Pritchard maintains that she repeatedly told AB his behavior was not appropriate and reported it to Walker multiple times. [Record Document 32-2 at 85-90, 94]. To Pritchard's knowledge, Walker took no action to stop AB's behavior. [Record Document 32-2 at 85-87, 89-91]. Pritchard admits she never reported AB's behavior directly to the corporate office or to the company hotline. [Record Document 32-2 at 86].

On November 16, 2017, the day after the incident in the parking lot, Pritchard contacted the state director, Mike Dahlhauser, and reported AB's behavior. [Record Document 32-2 at 95-97]. She informed him that she had post-traumatic stress disorder ("PTSD") and requested several days off. [Record Document 32-2 at 98-99]. Merakey granted Pritchard's request despite the fact that her psychiatrist would only write her an excuse for the day Pritchard visited her office. [Record Documents 30-2 at 4 and 36-1]

On November 17, 2017, Pritchard participated in a phone conversation with Merakey leadership to discuss measures to ensure Pritchard felt safe returning to work. [Record

Documents 30-10 and 32-2 at 99-100]. These included implementing a "code word system" and placing a lock on her door. [Record Document 30-11].

Pritchard returned to work on November 27, 2017. [Record Document 32-2 at 105]. She was asked to locate a misplaced file, which she did by the end of next day. [Record Document 32-2 at 117-18]. On November 29, 2017, AB returned to the Merakey facility for scheduled group therapy. [Record Document 32-2 at 113]. Upon seeing him, Pritchard went into Walker's office to avoid contact. [Record Document 32-2 at 113-14]. The next day Pritchard acknowledged receipt of a memorandum detailing additional protective measures, including the installation of a plexiglass window in the lobby wall and approval for Pritchard to work in the chart room. [Record Document 30-16].

On December 1, 2017, McNabb terminated Pritchard's employment. [Record Documents 30-15 at 3, 30-17 at 2, and 32-2 at 116]. The stated reasons for her termination included multiple disclosures of "personal and private information regarding a termination of a former [Merakey] employee to outside agency personnel" and the failure to locate a personnel file of a former employee for two days. [Record Document 30-17]. Pritchard maintains that she was able to locate the file within the standard time allotted to provide her supervisor with requested materials. [Record Document 32-2 at 118-119].

## LAW AND ANALYSIS

### I. Plaintiff's Objection to Defendant's Exhibits

The Court will first address Pritchard's objections to two of Merakey's exhibits because the Court's ruling on this motion determines what evidence it can properly consider when ruling on Merakey's motion for summary judgment. [Record Document 32 at 1-2].

Federal Rule of Civil Procedure 56(c) governs what evidence is admissible to prove that there is no genuinely disputed fact in a motion for summary judgment. Rule 56(c)(2) provides that a party may object to the Court considering material in the record that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The proponent of the evidence has the burden of demonstrating that the material is in admissible form, or can be in admissible form at trial. Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment.

Pritchard argues that the "Merakey Pennsylvania Integrity Policy" lacks foundation because Pritchard testified during her deposition that she had never seen the document. [Record Documents 30-4 and 32 at 2]. Merakey does not respond to this objection. Pritchard's objection based on lack of foundation is not well founded because Merakey will be able to produce a witness who can lay a proper foundation for this document at trial.

Pritchard's objection to this document is **SUSTAINED**, however, because the version of the Merakey Pennsylvania Integrity Policy attached to Merkay's motion lacks relevance. Evidence is relevant if it tends "to make a fact more or less probable than it would be without the evidence" and if the "fact is of consequence in determining the action." Fed. R. Evid. 401. Merakey has presented a version of the policy that states it was revised in 2018. [Record Document 30-4 at 1]. Pritchard was terminated in 2017, and hence she never worked for Merakey while this version of the document was in effect. Without information about what changes may or may not have been made in the 2018 revision, the document tends to prove nothing about Merakey's policy during the time period relevant to this action—2017.

Pritchard further contends that the "NHS Pennsylvania Integrity Policy Acknowledgement" lacks relevance because it corresponds to an earlier policy that has not been submitted into evidence. [Record Documents 30-5 and 32 at 2]. Merakey again did not respond. This objection is **OVERRULED**. While it is true that the first page of the exhibit addresses an Integrity Policy that has not been submitted into evidence, the second page is clearly relevant because it states that Pritchard was aware of her ability to make direct reports to Merakey's corporate office. [Record Document 30-5 at 2]. This tends to prove or disprove the fact that Pritchard was aware of how she could report AB's behavior to Merakey.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

---

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## III. <u>Plaintiff's Sex Discrimination Claim</u>

Pritchard alleges that Merakey engaged in sex discrimination. [Record Document 11 at 8-9]. Merakey contends that Pritchard cannot meet the Title VII requirement of demonstrating

that the harassment was "so severe or pervasive that it destroyed her opportunity to succeed in the workplace," especially in light of the fact that Pritchard's job included working with clients seeking mental health treatment. [Record Document 30-1 at 7]. It further argues that if the Court were to find that any incident was severe, it would be when AB touched Pritchard's breast. [Record Document 30-1 at 8]. Because Merakey took action immediately after Pritchard reported this incident, Pritchard lacks a claim that it failed to remedy the situation. [Record Document 30-1 at 8-9]. Pritchard responds that any actions Merakey took were "too little, and too late." [Record Document 32 at 6].

Under Title VII, harassment is "unlawful when it results in the employer 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). To establish a hostile work environment claim, the plaintiff must prove that she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Henandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). This standard also applies when the source of the harassment is a non-employee, like a patient or customer. *Gardner*, 915 F.3d at 322.

Merakey challenges Pritchard's ability to establish the fourth element of her claim. Sexual harassment affects a term, condition, or privilege of employment when it is "sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gardner*, 915 F.3d at 325 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The "severe or pervasive" standard is meant to be a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.* "A plaintiff 'must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.'" *Id.* (quoting *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)). Among the considerations relevant to determining objective reasonableness are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Royal*, 736 F.3d at 401 (quoting *Harris*, 510 U.S. at 23).

Here, Pritchard has created at least a genuine issue of material fact about how she subjectively perceived AB's actions. She states that as a result of AB touching her breast, her PTSD was reaggravated, she had increased depression, anxiety, crying spells, flashbacks, and nightmares, and she had to take an antidepressant. [Record Document 32-2 at 125-27]. From this a jury could conclude that Pritchard perceived AB's actions to be severe or pervasive enough to alter the conditions of her employment. The Court must next evaluate the objective reasonableness.

Even without considering the fact that Pritchard's alleged harasser was a client seeking mental health services,[4] Pritchard's harassment was not sufficiently severe or pervasive. In a

[4] Merakey argues that the Court should follow the line of cases regarding caregivers alleging harassment by patients with mental illness in this case because Pritchard worked in a facility providing mental health services and her alleged harasser had a mental illness, like in

case with facts similar to Pritchard's, the Fifth Circuit held that allegations of a coworker repeatedly touching a plaintiff, at least once on the breast and thigh, and repeatedly asking for hugs and kisses was adequate to survive summary judgment because the facts were sufficiently similar to *Harvill v. Westward Comm's, L.L.C.* where the Fifth Circuit found actionable a plaintiff's allegations that a coworker engaged in behaviors such as kissing her on the cheek, popping rubber bands at her breasts, touching her breasts multiple times, touching her buttocks multiple times, and rubbing against her body from behind over a seven-month period. *McKinnis v. Crescent Guardian, Inc.*, 189 F. App'x 307, 308-09 (5th Cir. 2006); *Harvill*, 433 F.3d 428, 435-36 (5th Cir. 2005). Importantly, the *McKinnis* court assumed that the plaintiff was touched in intimate areas of her body "on a number of occasions." *Id.* at 310.

Pritchard alleges that over a seven month period AB rested his chin on top of her head at least five times, rubbed his face against hers to show her that he had shaved one time, grabbed her hand to have her feel his beard once, "cupped" her breast once, and hugged her and kissed the top of her head an unspecified number of times. [Record Document 32-2 at 87-92, 97]. She does not allege that AB made any inappropriate comments to her. Pritchard's allegations therefore fail to rise to the level found adequate to survive summary judgment in *McKinnis* because she alleges only one incident where AB intimately touched her.

Furthermore, even if the Court were to find that AB cupping Pritchard's breast one time were severe enough to affect a term or condition of her employment, Merakey took

---

*Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d at 326-27. [Record Document 36 at 3-4]. Because the Court finds that Prichard cannot establish a claim for discrimination even without applying a standard that may make her claim more difficult to prove, it declines to decide if the standard applied to in-home or nursing home caregivers should be extended to plaintiffs in Pritchard's position.

prompt remedial action after Pritchard reported the incident. Whether an employer's response is sufficient is a fact-specific inquiry. *Harvill*, 433 F.3d at 437. To avoid liability, the employer's response must be "reasonably calculated to end the harassment" and "an employee must take advantage of corrective opportunities provided by the employer." *Id.* (quoting *Skidmore v. Precision Printing & Packaging Inc.*, 188 F.3d 606, 615-16 (5th Cir. 1999)).

The day after Pritchard reported that AB touched her breast, Merakey held a meeting, which included Pritchard, to discuss a plan of action. They settled on several measures including a code word system, placing a lock on the door, installing plexiglass in an opening of the lobby wall, and approval for Pritchard to work in a chart room. [Record Documents 30-10 at 2, 30-11, and 30-16]. Pritchard argues these were insufficient because the next time AB returned to Merakey she felt the need to seek refuge in her supervisor's office. This does not necessarily mean that Merakey's actions were not reasonable, however, because not enough time had passed for Merakey to reasonably have been expected to implement all safety measures and because Pritchard did not attempt to use at least one of these measures, the code word. [Record Document 30-13 at 12]. Because Pritchard cannot establish that the harassment affected a term, condition, or privilege of employment, or that Merakey failed to take prompt remedial action, her Title VII claim based on a hostile or abusive work environment is **DISMISSED**.

## IV. Plaintiff's Retaliation Claim

Pritchard also alleges that Merakey retaliated against her for reporting the sexual harassment. [Record Document 11 at 8-9]. Merakey contends first that Pritchard never engaged in a "protected activity" because reporting that a client sexually harassed her is not

reporting her *employer's* discriminatory acts, as is required for a Title VII retaliation claim. [Record Document 30-1 at 10]. Merakey further argues that even if Pritchard can establish that she engaged in a protected activity, she cannot demonstrate that this activity was the "but for" cause of her termination. [*Id.*] Pritchard responds that reporting a client's harassment is a protected activity, especially because Merakey's anti-harassment policy prohibits clients from engaging in harassment. [Record Document 32 at 7-8]. She contends that Merakey's stated reasons for her termination are pretextual. [Record Document 32 at 8].

Title VII prohibits an employer from taking action against an employee for, among other things, "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A prima facie claim of Title VII retaliation requires a plaintiff to establish that (1) she engaged in an activity protected by Title VII, (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse employment action. *Harville v. City of Hous., Miss.*, --F.3d-- No. 18-60117, 2019 WL 6906099, at *6 (5th Cir. Dec. 19, 2019). If a plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Royal*, 736 F.3d at 400. The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* At the pretext stage, the plaintiff must demonstrate "but-for causation."[5] *Garcia v. Prof'l Contract Servs, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

---

[5] The Fifth Circuit does not seem to have consistently required "but-for causation" at the same step in the analysis. *Compare Garcia*, 938 F.3d at 243 (holding that the "heightened but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework.") *with Harville*, 2019 WL 6906099, at * 6 (stating that the third element in a prima facie case of retaliation under Title VII is that there was a "but-for causal

Merkaey first argues that Pritchard cannot prove the first element of her prima facie case—that she engaged in a protected activity. This is unsupported by the caselaw. In *Cain v. Blackwell*, the Fifth Circuit held that an in-home care provider reporting inappropriate sexual comments made to her by a client was a protected activity. *Cain v. Blackwell*, 246 F.3d 758, 761 (5th Cir. 2001). This is no different than the activity Pritchard engaged in by reporting AB's behavior to Merakey, and thus she engaged in a protected activity.

Merakey next challenges Pritchard's ability to demonstrate the necessary causal connection between reporting AB's behavior and her termination. In *Garcia v. Professional Contract Services, Inc.*, the Fifth Circuit specifically held that "[a]t the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia*, F.3d at 243. The court has previously found that a two month period between the protected activity and the adverse employment action is enough to establish a causal connection via temporal proximity. *Id.* (citing *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005). In this case, the undisputed facts establish that McNabb, the person making the final decision to terminate Pritchard's employment, was made aware of Pritchard's allegations against AB by November 15, 2017. [Record Document 30-15 at 2]. It is also undisputed that Pritchard was terminated on December 1, 2017, two weeks after engaging in the protected activity. [Record Document

connection."). At least for purposes of this case, the standard applied at the prima facie stage does not change the ultimate outcome because Pritchard's claim will still fail in the end if she has not created at least a genuine issue of material fact about whether reporting AB's harassment was a but-for cause of her termination.

30-2 at 1]. This is less than what the Fifth Circuit has previously found sufficient, so Pritchard has met her burden of demonstrating causation at the prima facie stage.

Having found that Pritchard has created at least a genuine dispute of material fact as to each element of her prima facie case of Title VII retaliation,[6] the Court must next determine if Merakey has stated a legitimate, non-retaliatory reason for Pritchard's termination. Merakey has done this. The form terminating Pritchard's employment states that her termination was due to violations of the company's confidentiality policy and the failure to locate a file in a timely manner. [Record Document 30-17]. On their face, these reasons are legitimate and appear non-retaliatory, especially given Pritchard's prior disciplinary history. [Record Documents 30-7, 30-8, and 30-9].

Finally, the Court must determine if Pritchard can meet her summary judgment burden of establishing that Merakey's stated reasons are pretextual. Under *Garcia*, this requires Prichard to establish but-for causation. *Garcia*, 938 F.3d at 243. A but-for causal connection "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "[T]emporal proximity alone is insufficient to prove but for causation," *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), but "[t]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment," *Garcia*, 938 F.3d at 244 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). Among this other evidence may be evidence of disparate

[6] Termination is undisputedly an adverse employment action that satisfies the second element of Pritchard's prima facie case. *Royal*, 736 F.3d at 400.

treatment or evidence "that the employer's proffered explanation is false or unworthy of credence." *Harville*, 2019 WL 6906099 at *6.

Pritchard has failed to meet her summary judgment burden of establishing "other significant evidence of pretext" in addition to temporal proximity to prove that Merakey's stated reasons for her termination were pretextual. According to Prichard, the evidence supporting a finding of pretext is that the letters written about the incidents allegedly involving her were written after she reported that AB touched her breast, that the letters at most "alluded" to her as the person telling AB confidential information, and that she located the missing file she was tasked with finding within a time that was acceptable in the past. She does not have any evidence to dispute the fact that McNabb was aware of three separate reports about Pritchard making AB aware of confidential information by the morning on November 15, 2017, before she reported that AB touched her breast. She does not have evidence to refute that it was at this time that McNabb determined that terminating her employment was proper based on the seriousness of the allegations and Pritchard's prior disciplinary record. She presents no evidence of other similarly situated employees receiving disparate treatment. At most, Pritchard has established temporal proximity, a minor dispute over the acceptable amount of time to locate a missing file, and a challenge to the evidentiary sufficiency of written statements. This is not sufficient to establish pretext, and therefore Pritchard's retaliation claim is **DISMISSED**. *Garcia*, 938 F.3d at 244.

## V. Plaintiff's Disability Discrimination Claim

Finally, Pritchard alleges that Merakey engaged in disability discrimination. [Record Document 11 at 8-9]. Pritchard's complaint cites 42 U.S.C. § 2000e-5(f)(3) ("Title VII") as the

legal source prohibiting such discrimination. [Record Document 11 at 8]. Merkaey contends that Pritchard's claim of disability discrimination is governed by the Americans with Disabilities Act ("ADA"). [Record Document 30-1 at 6]. Pritchard did not directly respond to this argument, but subsequently cites the ADA in arguments about her claim of disability discrimination. [Record Document 45 at 2]. Title VII does not apply to disability discrimination and therefore the Court will adjudicate Pritchard's disability discrimination claim under the ADA.

Merakey argues that Pritchard is not entitled to the protections of the ADA because she does not have a "disability" as defined by the ADA. [Record Document 30-1 at 6]. It asserts that Pritchard cannot establish that her alleged disability, PTSD, substantially limits any major life activities as is required to have a "disability" under the ADA. [*Id.*] Pritchard responds that it is illogical to find that she does not have a disability simply because she is typically able to manage her PTSD. [Record Document 32 at 4]. She further argues that Equal Employment Opportunity Commission ("EEOC") regulations now dictate that the mere diagnosis of PTSD is sufficient to establish that the diagnosed individual suffers substantial life impairments. [Record Document 45 at 2].

The ADA prohibits an employer from discriminating against a "qualified individual" on the basis of a "disability." 42 U.S.C. § 12112(a). Without direct evidence of discrimination, establishing a prima facie case under the ADA requires a plaintiff to show that: "(1) [s]he has a disability, or was regarded as disabled; (2) [s]he was qualified for the job; and (3) [s]he was subject to an adverse employment decision on account of [her] disability." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). If a plaintiff can meet this burden, a "presumption of

discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Id.* (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)). If the employer does so, the plaintiff then again has the burden of producing evidence sufficient for a jury to find that the employer's reason is pretextual. *Id.* Pretext can be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)). Additionally, the Fifth Circuit has held that for claims raised under the ADA, "an employee who fails to demonstrate pretext can still survive summary judgment by showing that an employment decision was 'based on a mixture of legitimate and illegitimate motives . . . [and that] the illegitimate motive was a motivating factor in the decision.'" *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005)).

Whether or not Pritchard is "disabled" under the ADA is immaterial in this case because her claim will ultimately fail for the same reasons as her retaliation claim—the inability to show that Merakey's reasons for her termination are pretextual. Furthermore, Pritchard has presented no evidence besides temporal proximity to suggest that Merakey had illegitimate motives for terminating her employment. Pritchard's disability discrimination claim is therefore **DISMISSED**.

## CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment [Record Document 30] is **GRANTED.** Pritchard's claims are **DISMISSED with prejudice.** A judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 6th day of January, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE